IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT J. MELNICK, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 14-3065 |
| | : | |
| v. | : | |
| | : | |
| THE ESTATE OF JAMES L. LEUTHE, | : | |
| | : | |
| Defendant. | : | |

## **MEMORANDUM OPINION**

Smith, J.                                                                    October 24, 2014

     This matter is one of 29 cases filed by the plaintiff *pro se*, Scott J. Melnick, in which he is attempting to collect hundreds of millions of dollars based on alleged contracts by which he provided advice to various individuals and entities as to how to win the lottery.[1]  For the reasons set forth below, the court will order the plaintiff to show cause why the court should not dismiss the complaint in this case for (1) lack of subject-matter jurisdiction or (2) lack of timely service of process under Rule 4(m) of the Federal Rules of Civil Procedure.

---

[1] The plaintiff has filed 28 other actions in which he essentially alleges that (1) he expressly or impliedly entered into agreements with various individuals and entities through which he would provide them with guidance as to how to win the lottery, or (2) individuals or entities improperly obtained and used his advice as to how to win the lottery. *See* Civ. Action Nos. 5:14-cv-2855 (*Melnick v. The White House, et al.*), 5:14-cv-2856 (*Melnick v. Krotchta, et al.*), 5:14-cv-2857 (*Melnick v. Melnick, et al.*), 5:14-cv-3058 (*Melnick v. Knopf Automotive*), 5:14-cv-3060 (*Melnick v. The Dulski, et al.*), 5:14-cv-3062 (*Melnick v. Voitus*), 5:14-cv-3063 (*Melnick v. PNC Fin. Servs. Grp./Chex Sys., Inc., et al.*), 5:14-cv-3064 (*Melnick v. Hunan Springs*), 5:14-cv-3066 (*Melnick v. Baumann's Antiques & Candles*), 5:14-cv-3067 (*Melnick v. The Am. Detective Agency*), 5:14-cv-3068 (*Melnick v. Jaindl*), 5:14-cv-3069 (*Melnick v. Dellinger, et al.*), 5:14-cv-3070 (*Melnick v. Lehigh Pizza*), 5:14-cv-3071 (*Melnick v. Segel*), 5:14-cv-3072 (*Melnick v. Suoboda, et al.*), 5:14-cv-3073 (*Melnick v. Ueichert Commercial Brokerage*), 5:14-cv-3074 (*Melnick v. CNBC Studio*), 5:14-cv-3075 (*Melnick v. Weil Antique Ctr.*), 5:14-cv-3081 (*Melnick v. Alercia, et al.*), 5:14-cv-3083 (*Melnick v. Wells Fargo Bank, et al.*), 5:14-cv-3084 (*Melnick v. Young's Cleaners*), 5:14-cv-3085 (*Melnick v. Sulderits, et al.*), 5:14-cv-3086 *Melnick v. Dellisant, et al.*), 5:14-cv-3087 (*Melnick v. Ciappina, et al.*), 5:14-cv-3206 (*Melnick v. China House Rest.*), 5:14-cv-3207 (*Melnick v. Temple Beth El*), 5:14-cv-3208 (*Melnick v. Scott*), 5:14-cv-5631 (*Melnick v. Cole Haan*).  The plaintiff appears to have paid the filing fee for each of the aforementioned actions.

    The court has not relied on the allegations in the above cases or the dispositions in those cases in analyzing the issues discussed in this memorandum opinion.  The court references the cases only for contextual purposes.

## I.     SUMMARY OF ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiff commenced this action against the defendant, the Estate of James L. Leuthe by filing a complaint on May 29, 2014.  *See* Doc. No. 1.[2]  It appears that the Clerk of Court's office issued a summons to the plaintiff on June 2, 2014.  *See* 5-29-14 Unnumbered Docket Entry Between Doc. Nos. 1 & 2 (showing issuance of summons to plaintiff on June 2, 2014). The plaintiff then filed an amended complaint on October 22, 2014.  *See* Doc. No. 2.

In the amended complaint, the plaintiff alleges that he lives in Allentown, Pennsylvania, and the decedent, James L. Leuthe, lived in North Whitehall, Pennsylvania.  *See* Am. Compl. at ¶¶ 1-2.  He also alleges that he and the defendant are United States citizens.  *Id.* at ¶¶ 3-4.  He claims that the "court has jurisdiction, as the agreements made were completed by telephone and as given to friendly agreements."  *Id.* at ¶ 5.

As for the substance of his claims, the plaintiff avers that he "looked to have made a verbal and binding contract to proceed in a cooperative venture with [the decedent] to win a jackpot lottery."  *Id.* at ¶ 8.  In this agreement, the decedent agreed to "divulge the winnings of any assigned lottery tickets played by [him] as part of a lottery ticket purchasing agreement."  *Id.* at ¶ 9.  The decedent also allegedly agreed to disclose an income tax statement to the plaintiff so the plaintiff could determine whether or not the decedent won the lottery.  *Id.* at ¶ 10.

Despite this agreement, the decedent did not disclose the pertinent tax information to the plaintiff.  *Id.* at ¶ 11.  Thus, the plaintiff "assume[s], per the agreement, that the lottery was won but not disclosed."  *Id.*  The plaintiff claims that the decedent breached the contract when he failed to turn over the income tax statement, and the plaintiff seeks damages in the amount of $254,000,000 (relating to a January 24, 2007 Powerball lottery) and $15,000,000 (relating to a

---

[2] In the original complaint, the decedent's last name was spelled "Leuth."  *See* Compl. at 1.  In the soon-to-be referenced amended complaint, the plaintiff identifies the decedent's last name as "Leuthe."  *See* Am. Compl. at 1, Doc No. 2.

January 27, 2007 Powerball lottery). *Id.* at ¶¶ 12, 13. In addition, the plaintiff seeks an additional $134,500,000 in "compensatory damages," "$9,000 per lottery claim . . . for legal fees," and "[a] summation of at least 4% interest . . . for any money lost during this time." *Id.* at ¶¶ 14-16.[3]

## II.    DISCUSSION

Although there appear to be significant issues with the merits of the claims in the complaint insofar as the plaintiff is attempting to collect money resulting from a lottery that the decedent, James L. Leuthe, may or, most likely, may not have won prior to his death, the court will not address those issues at this point. Instead, there are two preliminary issues requiring resolution: First, it does not appear that the court has subject-matter jurisdiction over this action. Second, it does not appear that the plaintiff has properly effected service of the complaint and summons as required by Rule 4(m) of the Federal Rules of Civil Procedure.

With regard to subject-matter jurisdiction, the party asserting federal jurisdiction "bears the burden of showing that the case is properly before the court at all stages of the litigation." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993). Although the only document of record so far is the complaint, the court is obliged to address issues of subject-matter jurisdiction *sua sponte*. *See Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Philadelphia*, 657 F.2d 29, 36 (3d Cir. 1981) ("A federal court is bound to consider its own

---

[3] For reasons known only to the plaintiff, after asserting his allegations against the named defendant, he then describes his interaction with a "Mr. Mark Leuthe," whom he met at a Giant Food store in Allentown. *See* Am. Compl. at ¶ 20. The plaintiff alleges that he also entered into an agreement with Mark Leuthe to win the lottery, and he believes that "this defendant won much of the available money." *Id.* at ¶¶ 17, 20. Although the plaintiff is referring to an agreement with Mark Leuthe, he nonetheless asserts that the defendant breached the agreement when he refused to relinquish an income tax statement relating to the MegaMillions lottery draw on March 12, 2010, and a Powerball lottery draw on March 13, 2010. *Id.* at ¶ 21. The plaintiff demands $163,000,000 for the March 12, 2010 lottery winnings and $211,700,000 for the March 13, 2010 lottery winnings. *Id.* at ¶ 22. Once again, despite these requests for substantial amounts in damages, the plaintiff seeks an additional $187,350,000 in compensatory damages, "$9,000 per lottery claim . . . for legal fees," and "[a] summation of at least 4% interest . . . for any money lost during this time." *Id.* at ¶¶ 23-25.

jurisdiction preliminary to consideration of the merits."). If the court lacks subject-matter jurisdiction, the court <u>must</u> dismiss the action. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Here, the amended complaint does not contain any particular averments regarding subject-matter jurisdiction other than the plaintiff's blanket assertion that the court has jurisdiction because the parties spoke on the telephone. *See* Am. Compl. at ¶ 5. This allegation, in itself, does not affirmatively show the basis for this court's jurisdiction over this matter. Moreover, the court is unaware of any act of Congress providing the court with jurisdiction by virtue of apparently non-diverse parties' use of the telephone to communicate if said communication does not violate the Constitution or a federal statute.

The only document in which the plaintiff attempted to affirmatively identify the basis for the court's subject-matter jurisdiction in this matter was the original complaint. Although the original complaint is no longer the operative document because the plaintiff filed an amended complaint, the court notes that the plaintiff had indicated in the original complaint that the court has federal-question jurisdiction (28 U.S.C. § 1331) over this case. *See* Compl. at 2, Doc. No. 1. In support of this allegation, the plaintiff alleged that the following constitutional, statutory, or treaty rights are at issue: "Embezzlement, Theft of Service, Conspiracy." *Id.*

Even if the court were to rely on the plaintiff's allegation in the original complaint that he was seeking to invoke the court's jurisdiction over matters involving a federal question, he still has not sustained his burden to show that jurisdiction is proper here. The federal-question jurisdiction statute provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

"For a claim to arise under the Constitution, laws or treaties of the United States, a right or immunity created by the Constitution or laws of the United States must be an essential element of the plaintiff's claim." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 939 F. Supp. 398, 399 (E.D. Pa. 1996) (citation omitted).   "Furthermore, the cause of action must be created by the federal law or the vindication of a right under state law must turn upon the construction of that federal law." *Id.* (citation omitted).

Despite the plaintiff's general references to the court having federal-question jurisdiction and his assertion that his supposed federal rights against embezzlement, theft of service, and conspiracy are at issue, the complaint does not identify what, if any, federal, constitutional, statutory, or treaty rights, are essential elements of his claims.   Therefore, the plaintiff has not properly pleaded a valid basis for this court's subject-matter jurisdiction over this action under 28 U.S.C. § 1331.

Concerning the plaintiff's apparent failure to timely serve the complaint, he filed the complaint on May 29, 2014.   The plaintiff had 120 days from the filing of that complaint, *i.e.* September 26, 2014, to serve the summons and the complaint upon the defendant.   *See* Fed. R. Civ. P. 4(c)(1) (requiring plaintiff to serve summons with copy of complaint); Fed. R. Civ. P. 4(m) (requiring plaintiff to serve defendant with process "within 120 days after the complaint is filed").   The plaintiff has not filed any proof of service indicating that he has effected service of the summons and the complaint in this matter.   *See* Fed. R. Civ. P. 4(l)(1) ("Unless service is waived, proof of service must be made to the court.").   Additionally, while the court recognizes the plaintiff filed an amended complaint two days ago, on October 22, 2014, his filing of an amended complaint would not toll the 120-day period for service because the plaintiff is asserting claims in the amended complaint against the same defendant named in the original

5

complaint. *See, e.g.*, *Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006) ("[T]he 120-day period provided by Rule 4(m) is not restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint."); *Carmona v. Ross*, 376 F.3d 829, 830 (8th Cir. 2004) (same); *Blomquist v. Horned Dorset Primavera, Inc.*, CIV. 13-1835 MEL, 2014 WL 4537056, at *3 n.4 (D.P.R. Sept. 11, 2014) (explaining that "the 120–day period for serving process pursuant to Rule of Civil Procedure 4(m) began to run when the original third-party complaint was filed . . . and was not extended due to the amendment, which added only an additional allegation against third-party defendants"); *Torres v. Colvin*, CV-13-2300-PHX-LOA, 2014 WL 2683296, at *1 (D. Ariz. June 13, 2014) ("The filing of an amended complaint does not restart the 120–day service period against a defendant named in the original complaint under Rule 4(m)."); *Nayak v. CGA Law Firm*, 1:13-CV-2533, 2014 WL 772604, at *2 n.4 (M.D. Pa. Feb. 25, 2014) ("The filing of an amended complaint does not restart the 120–day period provided by Rule 4(m)."). Accordingly, to date, the plaintiff has not complied with Rule 4(m) by virtue of his failure to serve the summons and the complaint on the defendant and file the appropriate proof of service with the court.

### III.   CONCLUSION

For the reasons set forth above, it appears that the court lacks subject-matter jurisdiction over this action. Nonetheless, the court recognizes that when addressing the issue of subject-matter jurisdiction *sua sponte*, courts should ordinarily give the plaintiff "notice and an opportunity to respond." *Schneller ex rel. Schneller v. Fox Subacute at Clara Burke*, 317 F. App'x 135, 138 (3d Cir. 2008) (citations omitted). Therefore, despite the court's apparent lack of subject-matter jurisdiction over this case, the court will provide the plaintiff with a period of

twenty-one (21) days to file a written response in which he shows how the court has subject-matter jurisdiction over this case.

In addition, to the extent that the plaintiff can show that the court has subject-matter jurisdiction over this matter, he has still not complied with Rule 4(m) by serving the summons and the complaint upon the defendant within 120 days of the filing of the complaint.  Per the mandates of Rule 4(m), the court will dismiss this action without prejudice for the plaintiff's failure to properly effect service of the summons and the complaint unless the plaintiff provides a written response in twenty-one (21) days establishing (1) he effected service of process within the 120-day period, or (2) good cause for the failure to effect timely service.  *See* Fed. R. Civ. P. 4(m) (mandating dismissal of action against defendant not timely served within 120 days unless plaintiff shows good cause for failure to serve).

An appropriate order follows.

BY THE COURT:


*/s/ Edward G. Smith*
EDWARD G. SMITH, J.